**THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE COMMENCEMENT OF THE DEBTOR'S VOLUNTARY CHAPTER 11 CASE.**

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

IN RE:

EB HOLDINGS II, INC., a Nevada corporation,

Debtor.[1]

BK-S-19-16364-ABL

**IMPORTANT:** A voluntary chapter 11 case will be commenced by EB Holdings II, Inc. after the date of distribution of this pre-packaged chapter 11 plan. This pre-packaged chapter 11 plan is distributed to you as part of a prepetition solicitation of your vote on this pre-packaged chapter 11 plan.

### PRE-PACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF
### EB HOLDINGS II, INC. AND ITS AFFILIATE CO-PLAN PROPONENT,
### <u>EBT NEWCO, LLC</u>

---

[1]    The last four digits of the Debtor's federal tax identification number are 2838.  The location of the Debtor's corporate headquarters and the Debtor's service address is 2777 North Stemmons Freeway, Suite 2000, Dallas, TX 75207; the Debtor's registered agent is United Corporate Services, Inc., 2520 St. Rose Pkwy, Ste. 319, Henderson, NV 89074.

GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
650 White Drive, Suite 100
Las Vegas, Nevada 89119
Tel: (725) 777-3000
*[Proposed] Counsel for EB Holdings II, Inc.*

Dated:  August 27, 2019
           Las Vegas, Nevada

2

**TABLE OF CONTENTS**

**Page**

**ARTICLE I.    DEFINED    TERMS,    RULES    OF    INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW** .................................................**4**
    A.    Defined Terms ..................................................................................................4
    B.    Rules of Interpretation ...................................................................................20
    C.    Computation of Time......................................................................................21
    D.    Governing Law ...............................................................................................21
    E.    Reference to Monetary Figures......................................................................21
    F.    Reference to the Debtor or the Reorganized Debtor.....................................22
    G.    Controlling Document ...................................................................................22

**ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS**...........................................**22**
    A.    Administrative Claims ...................................................................................22
    B.    Fee Claims .....................................................................................................23
    C.    Priority Tax Claims ........................................................................................24

**ARTICLE III.    CLASSIFICATION    AND    TREATMENT    OF    CLAIMS    AND INTERESTS** ...................................................................................................................**24**
    A.    Summary of Classification.............................................................................25
    B.    Treatment of Claims and Interests ................................................................26
    C.    Special Provision Governing Unimpaired Claims.........................................30
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .........................................................................................30
    E.    Elimination of Vacant Classes.......................................................................30
    F.    Voting Classes ...............................................................................................30
    G.    Presumed Acceptance by Non-Voting Classes..............................................31
    H.    Subordinated Claims ......................................................................................31

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN**....................................**31**
    A.    General Settlement of Claims and Interests...................................................31
    B.    Restructuring Transactions ............................................................................32
    C.    Cancellation of Liens. ....................................................................................34
    D.    Sources of Consideration for Plan Distributions ...........................................34
    E.    Corporate Existence .......................................................................................34
    F.    Vesting of Assets in the Reorganized Debtor................................................35
    G.    Satisfaction of the PIK Loan Agreement and Cancellation of Existing Securities and Agreements............................................................................35
    H.    Corporate Action............................................................................................36
    I.    New Organizational Documents.....................................................................38
    J.    Directors and Officers of the Reorganized Debtor ........................................39
    K.    Effectuating Documents; Further Transactions .............................................39
    L.    Authorization, Issuance and Delivery of Reorganized EB Holdings Stock, Class B Units, and Class C Units.................................................................40
    M.    Exemption from Certain Taxes and Fees.......................................................40
    N.    Preservation of Causes of Action...................................................................41
    O.    Notice of Effective Date ................................................................................42
    P.    Securities Registration ...................................................................................42

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..........................................................................................................................**43**
    A.    Assumption of Executory Contracts and Unexpired Leases...............................43
    B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases........44

| | | |
|---|---|---|
| C. | Indemnification Obligations | 45 |
| D. | Director and Officer Liability Insurance | 46 |
| E. | Insurance Policies | 47 |
| F. | Modifications, Amendments, Supplements, Restatements or Other Agreements | 47 |
| G. | Reservation of Rights | 47 |
| H. | Nonoccurrence of Effective Date | 48 |
| I. | Contracts Neither Assumed nor Rejected | 48 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ........................................**48**
| | | |
|---|---|---|
| A. | Distributions Generally | 48 |
| B. | Delivery of Distributions to Holders of Allowed Claims in Classes 1, 2, and 4 | 48 |
| C. | Distributions to Holders of Allowed PIK Loan Claims | 48 |
| D. | Distributions to Holders of EBT Minority Shareholder Claims | 49 |
| E. | Distributions to the Holder of Existing EB Holdings Interests | 49 |
| F. | Distribution Record Date | 50 |
| G. | No Postpetition Interest on Claims | 50 |
| H. | Compliance with Tax Requirements/Allocations | 50 |
| I. | Unclaimed Property | 51 |
| J. | Manner of Payment under Plan | 51 |
| K. | Satisfaction of Claims | 52 |
| L. | Fractional Shares | 52 |

**ARTICLE VII. RELEASE, INJUNCTION AND RELATED PROVISIONS** ......................**52**
| | | |
|---|---|---|
| A. | Discharge of Claims and Termination of Interests | 52 |
| B. | Release of Liens | 53 |
| C. | Debtor Release | 53 |
| D. | Third-Party Release | 55 |
| E. | PIK Loan Satisfaction and Release | 56 |
| F. | Exculpation | 56 |
| G. | Injunction | 57 |
| H. | Waiver of Statutory Limitations on Releases | 58 |

**ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ...........................................................................**58**
| | | |
|---|---|---|
| A. | Conditions Precedent to Confirmation of the Plan | 58 |
| B. | Conditions Precedent to the Effective Date | 59 |
| C. | Waiver of Conditions | 60 |
| D. | Substantial Consummation | 61 |
| E. | Effect of Failure of a Condition. | 61 |

**ARTICLE IX. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN** ......................................................................................................................**61**
| | | |
|---|---|---|
| A. | Modification and Amendments | 61 |
| B. | Effect of Confirmation on Modifications | 62 |
| C. | Revocation or Withdrawal of the Plan | 62 |

**ARTICLE X. RETENTION OF JURISDICTION** ...............................................................**63**

**ARTICLE XI. MISCELLANEOUS PROVISIONS** ............................................................**66**
| | | |
|---|---|---|
| A. | Immediate Binding Effect | 66 |
| B. | Statutory Fees | 67 |
| C. | Additional Documents | 67 |
| D. | Reservation of Rights | 67 |

ii

E.    Successors and Assigns.................................................................................67
F.    Service of Documents ...................................................................................67
G.    Term of Injunctions or Stays.........................................................................68
H.    Exhibits .........................................................................................................68
I.    Deemed Acts. ................................................................................................68

iii

**INTRODUCTION**

EB Holdings II, Inc. (the "**Debtor**") and its affiliate, EBT NewCo, LLC ("**NewCo**"), jointly propose this prepackaged chapter 11 plan of reorganization for, among other things, the resolution of the Debtor's outstanding Claims, including the outstanding PIK Loan Claims, and Interests (all as defined below), pursuant to section 1121(a) of the Bankruptcy Code.

Capitalized terms used herein shall have the meanings set forth in Article I.A.

All Holders of Claims against and Interests in the Debtor may refer to the Disclosure Statement for information about the Debtor's history, businesses, assets, results of operations, historical financial information and projections of future operations, as well as a summary and description of the Plan and the Restructuring Transactions contemplated thereby. The Debtor and NewCo are joint proponents of the Plan within the meaning of sections 1129 and 1145 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE ELIGIBLE TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**

**DEFINED TERMS, RULES OF INTERPRETATION,**

**COMPUTATION OF TIME AND GOVERNING LAW**

A.    *Defined Terms*

Capitalized terms used herein have the meanings set forth below.

1.    "***Ad Hoc Committee***" means that certain ad hoc committee of Holders of PIK Loan Claims, as in effect from time to time, represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel, and advised by Houlihan Lokey Capital, Inc., as financial advisor.

2.    "***Administrative Claim***" means a Claim for costs and expenses of administration of the Debtor's Estate pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(2), including (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the businesses of the Debtor, and (b) Fee Claims.

3.    "*Administrative Claim Bar Date*" means the fifteenth (15th) Business Day after the Effective Date.

4.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.    "*Affiliate Co-Plan Proponent*" means NewCo.

6.    "*Allowed*" means with respect to any Claim, except as otherwise provided herein, (a) a Claim that is allowed under the Plan, under the Bankruptcy Code, or by Final Order, as applicable, or (b) a Claim that is listed in the Schedules as not contingent, not unliquidated and not disputed; provided that (x) any Claim that is allowed for the limited purpose of voting to accept or reject this Plan pursuant to an order of the Court shall not be considered "Allowed" for the purpose of distributions hereunder, and (y) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.  "*Allow*" and "*Allowing*" have correlative meanings.

7.    "*Alternative Release*" has the meaning set forth in section 13.2 of the Transaction Agreement.

8.    "*Alternative Release Excluded Claims*" has the same meaning as the definition of "Excluded Claims" set forth in section 2 of the Mutual Release Agreement, which is Exhibit E-2 to the Transaction Agreement as amended by the First TA Amendment.

9.    "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor arising under chapter 5 of the Bankruptcy Code, including actions or remedies under sections 502, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553(b) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

10.    "*Ballot*" means the ballots accompanying the Disclosure Statement upon which Holders of Claims or Interests entitled to vote may, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

11. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as may be amended from time to time.

12. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Nevada having jurisdiction over the Chapter 11 Case.

13. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, and the general, local and chambers rules of the Bankruptcy Court.

14. "*Business Day*" means any day other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

16. "*Causes of Action*" means any action, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before or on the Effective Date, in contract or in tort, at law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, "Causes of Action" include: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code (including Avoidance Actions); (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

17. "*Chapter 11 Case*" means the voluntary case filed by the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

18. "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code, as against the Debtor.

19.    "*Class*" means a category of Holders of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

20.    "*Class A Units*" means the 100 Class A Units of NewCo (which shall constitute 100% of the Class A Units of NewCo as of the Effective Date.

21.    "*Class B Units*" means the 10,000 Class B Units of NewCo (which shall constitute 100% of the Class B Units of NewCo as of the Effective Date), which Holders of Allowed PIK Loan Claims shall receive in exchange for the contribution of Reorganized EB Holdings Stock by such Holders to NewCo on the Effective Date pursuant to the Plan.

22.    "*Class C Units*" means the 10,000 Class C Units of NewCo (which shall constitute 100% of the Class C Units of NewCo as of the Effective Date), which the Sponsor and the EBT Minority Shareholders shall receive in exchange for the contribution of Reorganized EB Holdings Stock by the Sponsor and the EBT Minority Shareholders to NewCo on the Effective Date pursuant to the Plan.

23.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

24.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

25.    "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

26.    "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance reasonably acceptable to the Debtor, the QXH Parties, the Sponsor, the EBT Minority Shareholders, the Required Consenting PIK Lenders and the PIK Loan Agent (solely with respect to any provision that directly and adversely affects the legal or economic rights of the PIK Loan Agent).

27.    "*Consenting PIK Lenders*" means the Holders of PIK Loan Claims that are party to the Transaction Agreement, together with their respective successors and permitted assigns that subsequently become party to the Transaction Agreement pursuant to the terms thereof, who collectively hold more than ninety percent (90%) of the aggregate outstanding amount of the PIK Loan Claims.

28.    "*Consummation*" means the occurrence of the Effective Date.

29.    "*Contribution Agreement*" means that certain Contribution Agreement, dated April 15, 2019, by and among, RSR Corporation, Quexco Incorporated, the Debtor, the Sponsor, NewCo and the Consenting PIK Lenders (as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof).

30.    "*Cure Claim*" means a monetary Claim based upon the Debtor's defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

31.    "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") of the Debtor or under which the Debtor or its directors and officers are beneficiaries, for current or former directors', managers' and officers' liability.

32.    "*Debtor*" has the meaning set forth in the introductory paragraph of the Plan.

33.    "*Definitive Document*" means, as set forth in section 4 of the Transaction Agreement, all documents (including any related orders, agreements, instruments, schedules, or exhibits) that are reasonably necessary to implement the Restructuring Transactions, including, without limitation: (i) the Contribution Agreement and the documents delivered pursuant thereto; (ii) the Escrow Agreement (as defined in the Transaction Agreement) and the documents delivered pursuant thereto; (iii) the EBT Minority Contribution Agreement and the documents delivered pursuant thereto; (iv) any organizational documents, management services agreements, shareholder and member-related agreements, or other governance documents for the Reorganized Debtor; (v) any organizational documents, management services agreements, shareholder and member-related agreements, or other governance documents for NewCo, including the NewCo LLC Agreement (as defined in the Transaction Agreement), the Second Amended & Restated

NewCo LLC Agreement (as defined in the Transaction Agreement), the Third Amended & Restated NewCo LLC Agreement and the documents delivered pursuant thereto; (vi) this Plan; (vii) the documents to be filed in the supplement to this Plan; (viii) the Disclosure Statement; (ix) the motion seeking approval of the Disclosure Statement and the order approving the Disclosure Statement; (x) the Confirmation Order, and the motion seeking confirmation of the Plan and entry of the Confirmation Order; (xi)(I) any "first day" motions and (II) any orders of the Bankruptcy Court approving any "first day" motions; and (xii) any documentation relating to distributions to be provided to the Holders of any PIK Loan Claims or EBT Minority Shareholder Claims under this Plan.

34.     "*Disclosure Statement*" means the *Disclosure Statement for the Prepackaged Chapter 11 Plan of Reorganization of EB Holdings II, Inc. and its Affiliate Co-Plan Proponent, EBT NewCo, LLC*, as it may be further amended from time to time in accordance with the terms hereof and of the Transaction Agreement, including all exhibits and schedules thereto, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law, and which is in form and substance reasonably acceptable to the Debtor, the QXH Parties, the Sponsor and the Required Consenting PIK Lenders.

35.     "*Disputed*" means a Claim that is not yet Allowed.

36.     "*Distribution Record Date*" means the date for determining which Holders of Claims or Interests are eligible to receive distributions under the Plan, which date shall be two (2) Business Days after the Confirmation Date.

37.     "*DTC*" means The Depository Trust Company, its nominee, Cede & Co., or any Affiliates thereof.

38.     "*EB Holdings*" means EB Holdings II, Inc., a Nevada corporation, and the Debtor under this Plan.

39.     "*EBT*" means Eco-Bat Technologies Limited, a private limited company incorporated in England and Wales, and an Affiliate of the Debtor.

40.     "*EBT Minority Contribution Agreement*" means that certain Contribution and Support Agreement, dated July 30, 2019, by and among, the Debtor, EBT, the Sponsor Manager,

the Sponsor, NewCo, the Manager, the QXH Parties, the EBT Minority Shareholders and the certain Consenting PIK Lenders party thereto (as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof), which agreement is attached as Exhibit 5 to the Disclosure Statement.

41. "***EBT Minority Parties***" means the EBT Minority Shareholders and David Golub, Lawrence Golub, Timothy Brog, Golub Capital LLC, Stanley Shuman, Eran Ashany, and Allen & Company LLC.

42. "***EBT Minority Release***" means the releases provided in the Mutual Release Agreement, which is Exhibit E to the EBT Minority Contribution Agreement.

43. "***EBT Minority Release Excluded Claims***" has the same meaning as the definition of "Excluded Claims" set forth in section 1.c of the Mutual Release Agreement, which is Exhibit E to the EBT Minority Contribution Agreement.

44. "***EBT Minority Shareholder Claims***" means any Claim held by certain of the EBT Minority Shareholders.

45. "***EBT Minority Shareholders***" means LEG Q LLC, a Delaware limited liability company, MP PB L.P., a New Jersey limited partnership, and Trinity Investments, a New York general partnership.

46. "***EBT Ordinary Shares***" means the outstanding ordinary shares of EBT.

47. "***Effective Date***" means the date on which all conditions precedent specified in Article VIII.B of the Plan have been satisfied (or waived in accordance with Article VIII.C of the Plan).

48. "***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code.

49. "***Estate***" means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

50. "***Exchange Rate***" means prevailing spot currency exchange rate as published by the Wall Street Journal on the Petition Date (*e.g.*, €1 = USD 1.0942). Solely for purposes of this Plan, any Claim against the Debtor in non-U.S. currency will be converted into U.S. dollars on the basis of the Exchange Rate.

51.     "*Excluded Claims*" means, collectively, the Alternative Release Excluded Claims and the EBT Minority Release Excluded Claims.

52.     "*Exculpated Claim*" means any Released Claim, Cause of Action or any claim related to any act or omission derived from, based upon, related to or arising from the Debtor's prepetition restructuring efforts, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation or Filing of the Disclosure Statement, the Plan or any contract, instrument, release or other agreement or document (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with any of the foregoing; provided, however, that Exculpated Claims shall not include any post-Effective Date obligations of any party or Entity under the Plan, any of the Restructuring Transactions or any document, instrument or agreement (including those set forth in the Plan Supplement, the Transaction Agreement, the Contribution Agreement or the EBT Minority Contribution Agreement) executed to implement the Plan.

53.     "*Exculpation*" means the exculpation set forth in Article VII.EF of the Plan.

54.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code, including any modifications, amendments, addenda or supplements thereto or restatements thereof.

55.     "*Existing EB Holdings Interests*" means the Interests that exist immediately before the Effective Date, 100% of which are owned by NewCo.

56.     "*Fee Claim*" means a Claim for professional services rendered or out-of-pocket costs incurred on or after the Petition Date through the Effective Date by Professional persons retained by the Debtor.

57.     "*File*," "*Filed*," or "*Filing*" means file, filed or filing in the Chapter 11 Case with the Bankruptcy Court.

58.    "*Final Order*" means an order, ruling or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case (or by the clerk of such other court of competent jurisdiction on the docket of such court), which has not been reversed, stayed, modified, amended or vacated, and as to which (a) the time to appeal, petition for certiorari or move for a new trial, stay, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, stay, reargument or rehearing shall be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, stay, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order, shall not cause an order not to be a Final Order.

59.    "*First TA Amendment*" means that certain first amendment to the Transaction Agreement, dated as of July 30, 2019, by and among EB Holdings, QXH, the Sponsor, and the certain Consenting PIK Lenders party thereto, which is attached to the Disclosure Statement as Exhibit 3-B.

60.    "*General Unsecured Claim*" means any Claim against the Debtor that is not otherwise paid in full during the Chapter 11 Case pursuant to an order of the Bankruptcy Court and that is not: (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) a Secured Claim; (e) a PIK Loan Claim; (f) an EBT Minority Shareholder Claim; or (g) an Intercompany Claim.

61.    "*GLAS Agreements*" means, collectively, the GLAS Letter Agreement and the GLAS Supplemental Agreement.

62.    "*GLAS Direction Letter*" means that certain direction letter, dated May 18, 2017, and delivered to the PIK Loan Agent by the Holders of PIK Loan Claims that are signatories thereto.

63.    "*GLAS Engagement Letter*" means that certain GLAS Americas LLC Proposal for Administrative Services, dated April 25, 2017, by and among the PIK Loan Agent and the other parties thereto.

64.    "*GLAS Letter Agreement*" means that certain Letter Agreement in Respect of Transfer Certificate and Certain Matters Related to the Administrative Agent, dated April 15, 2019, by and among the PIK Loan Agent and the other parties thereto.

65.    "*GLAS Supplemental Agreement*" means that certain Agreement Regarding Survival of PIK Loan Agreement Indemnity Provisions, dated July 30, 2019, by and among the PIK Loan Agent and the other parties thereto.

66.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

67.    "*Holder*" means any Entity holding a Claim against or Interest in the Debtor.

68.    "*Impaired*" means, when used in reference to a Claim or an Interest, a Claim or an Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69.    "*Intercompany Claim*" means any Claim against the Debtor held by a Non-Debtor.

70.    "*Interest*" means any equity securities (as defined in section 101(16) of the Bankruptcy Code) of the Debtor, including all issued, unissued, authorized or outstanding shares of stock or limited company interests, together with any (i) options, warrants or contractual rights to purchase or acquire any such equity securities at any time, and all rights arising with respect thereto, and (ii) rights to purchase or demand the issuance of any of the foregoing, including (a) conversion, exchange, voting, participation, and dividend rights, (b) liquidation preferences, (c) options, warrants, and put rights, and (d) stock-appreciation rights.

71.    "*Liabilities*" means any and all claims, obligations, suits, judgments, damages, demands, debts, rights, recovery actions, Causes of Action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or

unforeseen, arising in law, equity or otherwise, that are based in whole or in part on any act, event, injury, omission, transaction or agreement.

72.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

73.    "*Manager*" means EBT ManagerCo, LLC, a Delaware limited liability company.

74.    "*Metals HoldCo*" means Metals HoldCo, Inc., a Delaware corporation.

75.    "*New Board*" means the initial board of directors, members or managers, as applicable, of the Reorganized Debtor.

76.    "*New Organizational Documents*" means the form of the certificates or articles of incorporation, limited liability company agreements, bylaws or such other applicable formation documents of the Reorganized Debtor and NewCo, which shall be in form and substance reasonably acceptable to the Debtor, the QXH Parties, the Sponsor and the Required Consenting PIK Lenders; provided, however, that no changes to the forms of the New Organizational Documents that were attached as exhibits to the Transaction Agreement may be made without the approval of all parties necessary to approve any amendment to the applicable New Organizational Documents pursuant to the terms thereof.   The New Organizational Documents or a representative form thereof shall be included in the Plan Supplement.

77.    "*NewCo*" means EBT NewCo, LLC, a Delaware limited liability company, and an Affiliate of the Debtor and joint proponent of the Plan.

78.    "*NewCo Membership Register*" means the official register of holders of equity securities (as defined in section 101(16) of the Bankruptcy Code) in NewCo maintained by NewCo (or its designee).

79.    "*Non-Debtor*" means any subsidiary or Affiliate of the Debtor.

80.    "*Notice and Claims Agent*" means Prime Clerk LLC, the claims, noticing, and solicitation agent retained by the Debtor.

81.    "*Other Priority Claim*" means any Allowed Claim against the Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Case.

14

82.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

83.    "*Petition Date*" means the date on which the Debtor commenced the Chapter 11 Case.

84.    "*PIK Facility Register*" means the register maintained by the PIK Loan Agent pursuant to section 22.5 of the PIK Loan Agreement.

85.    "*PIK Loan Agent*" means GLAS USA LLC, in its capacity as successor administrative agent under the PIK Loan Agreement.

86.    "*PIK Loan Agent Expenses*" means all fees and expenses of the PIK Loan Agent and its counsel, Wilmer Cutler Pickering Hale and Dorr LLP and Larson Zirzow & Kaplan, LLC, incurred up to and including the Effective Date pursuant to the GLAS Engagement Letter.

87.    "*PIK Loan Agreement*" means that certain €600,000,000 PIK Loan Agreement, dated as of March 23, 2007 (as amended, supplemented or otherwise modified from time to time), between, *inter alios*, EB Holdings, Inc. (predecessor by redomestication merger to the Debtor), the lenders from time to time party thereto, and the PIK Loan Agent, as successor administrative agent.

88.    "*PIK Loan Claim*" means any Claim arising under or related to the PIK Loan Agreement.

89.    "*Plan*" means this prepackaged chapter 11 plan of reorganization, as the same may be further amended, supplemented or modified from time to time in accordance with the terms hereof and the terms of the Transaction Agreement, including the Plan Supplement and all exhibits, supplements, appendices and schedules thereto, and which shall be in form and substance reasonably acceptable to the Debtor, the QXH Parties, the Sponsor, the EBT Minority Shareholders, the Required Consenting PIK Lenders and the PIK Loan Agent (solely with respect to any provision that directly and adversely affects the legal or economic rights of the PIK Loan Agent).

90.    "*Plan Supplement*" means a supplemental appendix to the Plan containing, among other things, substantially final forms of documents, schedules, and exhibits to the Plan to be Filed with the Bankruptcy Court (each of which shall be in form and substance reasonably acceptable to the Debtor, the QXH Parties, the Sponsor, the EBT Minority Shareholders and the Required

15

Consenting PIK Lenders); provided, however, that through the Effective Date, the Debtor shall have the right to amend and supplement the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan and the Transaction Agreement. The Plan Supplement shall be Filed with the Bankruptcy Court not later than seven (7) calendar days prior to the Confirmation Hearing.

91. "*Post-Restructuring Liquidity Event*" means, as set forth in the Transaction Agreement, either of the following effectuated after the Effective Date: (i) an initial public offering of shares of NewCo, the Debtor, Metals HoldCo or EBT or (ii) the sale or exchange, in whatever form, of at least a majority of the assets or at least a majority of the Equity Interests (as defined in the Transaction Agreement) of NewCo, EB Holdings, Metals HoldCo, or EBT in which the equity holders owning a majority of the voting securities of the applicable Person immediately prior to such transaction do not own a majority of the voting securities of the surviving Person (including the ultimate parent company).

92. "*Priority Claims*" means Priority Tax Claims and Other Priority Claims.

93. "*Priority Tax Claim*" means any Claim of a Governmental Unit against the Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

94. "*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in the Chapter 11 Case in accordance with section 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to section 327, 328, 329, 330, 331 or 503(b) of the Bankruptcy Code.

95. "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

96. "*QXH Parties*" means QXH II, Inc., a Nevada corporation, RSR Corporation, a Delaware corporation, and Quexco Incorporated, a Delaware corporation.

97. "*Reinstated*" or "*Reinstatement*" means, unless the Plan specifies a particular method pursuant to which a Claim or Interest shall be reinstated, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

98. "*Released Claims*" has the meaning set forth in Article VII.C of the Plan.

16

99.    "*Released Parties*" means each of the following in their capacity as such: (i) the Debtor; (ii) the Reorganized Debtor; (iii) the Debtor's and the Reorganized Debtor's respective current and former boards of directors and each of the members thereof; (iv) EBT; (v) EBT's current and former board of directors and each of the members thereof; (vi) EBT and Quexco Incorporated's current and former advisory board and each of the members thereof; (vii) NewCo; (viii) the Sponsor; (ix) the Sponsor Manager; (x) the Manager; (xi) the PIK Loan Agent; (xii) the Consenting PIK Lenders; (xiii) the Ad Hoc Committee and each of its members; (xiv) the EBT Minority Parties, and (xv) with respect to each of the foregoing Entities in clauses (i) through (xi), such Entities' Affiliates and Representatives, expressly including Howard Meyers, Rose-Marie Meyers, and The Rose-Marie Meyers 2006 Irrevocable Trust.

100.    "*Releasing Parties*" means each of the following in their capacity as such: (i) any Released Party; (ii) all Holders of Claims or Interests who submit a Ballot voting to accept the Plan; and (iii) with respect to the foregoing clauses (i) and (ii), such Entities' Representatives.

101.    "*Reorganized Debtor*" means the Debtor, or any successors thereto, by merger, consolidation, sale, transfer or otherwise, on or after the Effective Date.

102.    "*Reorganized EB Holdings Stock*" means the shares of common stock, par value $0.01 per share, of the Reorganized Debtor to be issued to (i) NewCo on the Effective Date pursuant to the Plan; (ii) Holders of Allowed PIK Loan Claims on the Effective Date pursuant to the Plan, and which shall, automatically and without any action by such Holders of Allowed PIK Loan Claims, immediately be contributed to NewCo in exchange for 10,000 Class B Units pursuant to the Plan; and (iii) the Sponsor and the EBT Minority Shareholders on the Effective Date pursuant to the Plan, and which shall, automatically and without any action by the Sponsor and such EBT Minority Shareholders, immediately be contributed to NewCo in exchange for 10,000 Class C Units pursuant to the Plan.

103.    "*Representatives*" means, with respect to any Entity, parent companies, officers, directors, managers, members, partners, principals, managed funds, employees, professionals, advisors, financial advisors, accountants, attorneys, investment bankers, actuaries, consultants, employees, agents, and other representatives, and each of their respective heirs, executors,

17

administrators, beneficiaries, legal representatives, predecessors, successors, and assigns, in each case, solely in such capacity, serving on or after the Petition Date.

104.    "*Required Consenting PIK Lenders*" means as of the date of determination, Consenting PIK Lenders holding at least a majority of the aggregate outstanding principal amount of the PIK Loan Claims held by all of the Consenting PIK Lenders as of such date.

105.    "*Restructuring Transactions*" has the meaning set forth in Article IV.B of the Plan.

106.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means any schedule (including any amendments or modifications thereto) of certain Executory Contracts and Unexpired Leases to be rejected by the Debtor pursuant hereto, as set forth in the Plan Supplement, as amended by the Debtor from time to time prior to the Confirmation Date.

107.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs that will be Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

108.    "*Secured*" means, when referring to a Claim, a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

109.    "*Secured Tax Claim*" means any Secured Claim against the Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

110.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended.

111.   "*Security*" has the meaning set forth in section 101(49) of the Bankruptcy Code.

112.   "*Sponsor*" means Howard M. Meyers.

113.   "*Sponsor Manager*" means EBT Sponsor Manager, LLC, a Delaware limited liability company.

114.   "*Statutory Fees*" means all fees for which the Debtor is obligated pursuant to 28 U.S.C. § 1930(a)(6).

115.   "*Tax*" means: (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value-added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group or being a party to any agreement or arrangement whereby liability for payment of any such amount is determined by reference to the liability of any other Entity.

116.   "*Taxing Authority*" means any Governmental Unit exercising any authority to impose, regulate, levy, assess or administer the imposition of any Tax.

117.   "*Third Amended & Restated NewCo LLC Agreement*" means the Third Amended and Restated Limited Liability Company Agreement of NewCo, dated as of July 30, 2019 (as amended, supplemented, or otherwise modified from time to time in accordance with the terms of thereof and the Transaction Agreement), which agreement is attached as Exhibit A to the EBT Minority Contribution Agreement and as Exhibit A to the First TA Amendment.

118.   "*Transaction Agreement*" means that certain Amended and Restated Transaction Agreement, including all exhibits, annexes and schedules thereto, dated as of April 15, 2019 (as amended by the First TA Amendment, and as further amended, supplemented or otherwise modified from time to time in accordance with the terms thereof), by and among the Debtor and each of its direct and indirect subsidiaries that are signatory thereto, the QXH Parties, NewCo, the Manager, the Sponsor Manager, and the Consenting PIK Lenders, which agreement is attached as Exhibit 3-A to the Disclosure Statement.

19

119.    "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code, including any modifications, amendments, addenda or supplements thereto or restatements thereof.

120.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

121.    "*U.S. Trustee*" means the United States Trustee for the District of Nevada (Region 17).

**B.    *Rules of Interpretation***

For purposes of the Plan, and unless otherwise specified herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented or otherwise modified in accordance with the terms of the Plan; (4) all references herein to "Articles" are references to Articles of the Plan or hereto; (5) the words "herein," "hereof," "hereunder" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the

Bankruptcy Rules, as the case may be; (10) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case; (11) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's permitted successors and assigns; (12) any effectuating provisions may be interpreted by the Reorganized Debtor in a manner consistent with the overall purpose and intent of the Plan, all without further notice to or action, order or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control in all respects; and (13) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Case.

### C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

### D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or except as otherwise set forth in any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (in which case the governing law of such agreement shall control), the laws of the State of Nevada without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan; provided, however, that corporate or entity governance matters relating to the Debtor, the Reorganized Debtor, and NewCo, as applicable, shall be governed by the laws of the state of their respective incorporation or organization.

### E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.  Solely for purposes of the Plan, Claims

against the Debtor denominated in currencies other than that of the United States, including, for the avoidance of doubt, PIK Loan Claims, are converted into U.S. dollars based on the Exchange Rate.

### F.    *Reference to the Debtor or the Reorganized Debtor*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

### G.    *Controlling Document*

Subject to Article VIII.A and Article VIII.B, to the extent that any provision of the Disclosure Statement, Plan Supplement, Transaction Agreement, or any order referenced in the Plan (other than the Confirmation Order), or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing, conflict with or are in any way inconsistent with any term or provision of the Plan (without reference to the Plan Supplement), the Plan (without reference to the Plan Supplement) shall govern and control; provided, however, that the Plan shall not alter, modify or amend any provision of the Transaction Agreement, expressly including all releases provided therein, that became effective prior to the entry of the Confirmation Order. In the event of any conflict or inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**ARTICLE II.**

**ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

### A.    *Administrative Claims*

Except to the extent that a Holder of an Allowed Administrative Claim (other than a Fee Claim) and the Debtor agree to less favorable treatment with respect to such Holder, each such Holder shall be paid in full and final satisfaction of such Claim, by the Debtor, or after the Effective Date, by the Reorganized Debtor (or otherwise satisfied in accordance with its terms), upon the

22

latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the fourteenth (14th) Business Day after such Claim is Allowed or as soon thereafter as practicable; (iv) the date such Claim becomes due by its terms; and (v) such date as is agreed to by the Holder of such Claim and the Debtor or the Reorganized Debtor, as applicable.

All requests for payment of Administrative Claims (other than Fee Claims) against the Debtor must be filed by the Administrative Claim Bar Date or the Holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor and the Reorganized Debtor, as applicable.  Notwithstanding the foregoing, no request for payment of an Administrative Claim (other than a Fee Claim) shall be required to be filed with respect to an Administrative Claim that has been paid in the ordinary course of the Debtor's business, in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such Claim.

**B.** *Fee Claims*

All final applications for allowance and disbursement of Fee Claims must be Filed on or before the Administrative Claim Bar Date or the Holders thereof shall be forever barred from asserting such Claims against the Debtor and the Reorganized Debtor.  All such applications shall be served on counsel to the Reorganized Debtor, the U.S. Trustee, and all Persons that receive notice in the Chapter 11 Case through the Bankruptcy Court's ECF system.

Allowed Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which an order relating to any such Allowed Fee Claim is entered or as soon as reasonably practicable thereafter, or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Fee Claim and the Debtor or the Reorganized Debtor, as applicable.  Notwithstanding the foregoing, any Fee Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court may be paid at the times and in the amounts authorized pursuant to such orders.

On or about the Effective Date, Holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services before the Effective Date to the Debtor and

23

the Reorganized Debtor shall separately escrow for such estimated amounts for the benefit of the Holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a Holder of a Fee Claim does not provide an estimate, the Reorganized Debtor may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such Holder of a Fee Claim.  When all such Allowed Fee Claims have been paid in full, any remaining amount in such escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Reorganized Debtor without any further action or order of the Bankruptcy Court.

The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### C.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, payment in full, together with accrued interest at the applicable statutory rate, in Cash as follows: (i) its *pro rata* portion of $100,000 on the first Business Day ninety (90) days after the Effective Date or as soon as practicable thereafter; (ii) its *pro rata* portion of $100,000 on the first Business Day one hundred eighty (180) days after the Effective Date or as soon as practicable thereafter; and (iii) the outstanding balance of such Claim, inclusive of post-Effective Date accrued interest at the statutory rate, on the earlier of: (a) the closing of the Post-Restructuring Liquidity Event, and (b) the first Business Day that is one (1) year after the Effective Date.  In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as a Secured Claim if such Claim is not otherwise paid or satisfied in full.

## ARTICLE III.

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

All Claims against and Interests in the Debtor, except Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including

24

voting, Confirmation and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

### A.    *Summary of Classification*

A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest, as applicable, in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified. All of the potential Classes for the Debtor are set forth herein.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claims | Unimpaired | No (Presumed to Accept) |
| 3 | PIK Loan Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | EBT Minority Shareholder Claims | Impaired | Yes |

25

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 6 | Intercompany Claims | Unimpaired | No (Presumed to Accept) |
| 7 | Existing EB Holdings Interests | Impaired | Yes |

**B.**    ***Treatment of Claims and Interests***

The treatment and voting rights provided under the Plan to each Class for distribution purposes is specified below:

1.    Class 1 – Other Priority Claims

a.    *Classification*:  Class 1 consists of all Allowed Other Priority Claims.

b.    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each such Claim, (i) payment in full in Cash of the unpaid portion of its Allowed Other Priority Claim on the later of the Effective Date and the date such Claim becomes due and payable in the ordinary course of business or (ii) such other treatment sufficient to render such Holder's Allowed Other Priority Claim Unimpaired.

c.    *Voting*:  Class 1 is Unimpaired under the Plan.  Each Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Other Priority Claims.

2.    Class 2 – Secured Claims

a.    *Classification*:  Class 2 consists of all Allowed Secured Claims.

26

b. *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each such Claim, (i) payment in full in Cash of the unpaid portion of its Allowed Secured Claim on the later of the Effective Date and the date such Claim becomes due and payable in the ordinary course of business, (ii) Reinstatement of its Allowed Secured Claim, or (iii) such other treatment sufficient to render such Holder's Allowed Secured Claim Unimpaired.

c. *Voting*: Class 2 is Unimpaired under the Plan. Each Holder of an Allowed Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Secured Claims.

3. Class 3 – PIK Loan Claims

a. *Classification*: Class 3 consists of all Allowed PIK Loan Claims.

b. *Allowance*: The PIK Loan Claims shall be deemed Allowed on the Effective Date in the aggregate amount of $2,494,487,827.02,[1] *plus* any accrued and unpaid interest thereon after August 27, 2019 (including any applicable default interest), *plus* any unpaid fees, costs, charges and other amounts payable under the PIK Loan Credit Agreement up to, but not including, the Petition Date. The Holders of PIK Loan Claims and the PIK Loan Agent shall not be required to file Proofs of Claim on account of their PIK Loan Claims.

c. *Treatment*: Each Holder of an Allowed PIK Loan Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge

---

[1] This amount is the aggregate balance due under the PIK Loan as of August 27, 2019, applying an exchange rate as of August 27, 2019.

27

of, and in exchange for, each such Claim, its *pro rata* share of 86.811% of the Reorganized EB Holdings Stock, which Reorganized EB Holdings Stock shall, automatically and without any action by the Holders of Allowed PIK Loan Claims, immediately be contributed to NewCo in exchange for such Holder's *pro rata* share of the Class B Units.

    d.    *Voting*:  Class 3 is Impaired under the Plan.  Each Holder of an Allowed PIK Loan Claim is entitled to vote to accept or reject the Plan.

4.    <u>Class 4 – General Unsecured Claims</u>

    a.    *Classification*:  Class 4 consists of all Allowed General Unsecured Claims.

    b.    *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each such Claim: (i) its *pro rata* portion of $10,000 on the first Business Day one hundred eighty (180) days after the Effective Date or as soon as practicable thereafter; and (ii) the payment in full in Cash of the outstanding balance of such Claim on the earlier of: (a) the closing of the Post-Restructuring Liquidity Event, and (b) the first Business Day that is one (1) year after the Effective Date or as soon as practicable thereafter.

    c.    *Voting*:  Class 4 is Impaired under the Plan.  Each Holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

5.    <u>Class 5 – EBT Minority Shareholder Claims</u>

    a.    *Classification*:  Class 5 consists of all EBT Minority Shareholder Claims.

    b.    *Allowance*:  The Holders of EBT Minority Shareholder Claims shall not be required to file Proofs of Claim on account of their EBT Minority Shareholder Claims.

    c.    *Treatment*:  Each Holder of an EBT Minority Shareholder Claim shall receive, in full and final satisfaction, compromise, settlement, release, and

discharge of, and in exchange for, each such Claim, as well as their contribution, transfer, assignment and delivery of all of their right, title, and interest in the EBT Ordinary Shares to the Debtor, its *pro rata* share of 12.804% of the Reorganized EB Holdings Stock, which Reorganized EB Holdings Stock shall, automatically and without any action by the Holders of EBT Minority Shareholder Claims, immediately be contributed to NewCo in exchange for such Holder's *pro rata* share of the Class C Units.

d.    *Voting*:  Class 5 is Impaired under the Plan.  Each Holder of a Minority Shareholder Claim is entitled to vote to accept or reject the Plan.

6.    Class 6 – Intercompany Claims

a.    *Classification*:  Class 6 consists of all Intercompany Claims.

b.    *Treatment*: On the Effective Date, all Intercompany Claims shall be paid, adjusted, continued, settled, Reinstated, discharged or eliminated, in each case to the extent determined to be appropriate by the Debtor or the Reorganized Debtor, as applicable, with the consent of the Required Consenting PIK Lenders and the QXH Parties.

c.    *Voting*:  Class 6 is Unimpaired under the Plan.  Each Holder of an Intercompany Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Intercompany Claims.

7.    Class 7 – Existing EB Holdings Interests

a.    *Classification*:  Class 7 consists of all Existing EB Holdings Interests.

b.    *Treatment*:  On the Effective Date: (i) all Existing EB Holdings Interests shall be cancelled, and (ii) the Holder of the Existing EB Holdings Interests shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Interests, 0.075% of the Reorganized EB Holdings Stock.

29

c.      *Voting*:  Class 7 is Impaired under the Plan.  The Holder of Existing EB Holdings Interests is entitled to vote to accept or reject the Plan.

### C.      *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's or the Reorganized Debtor's rights in respect of any Unimpaired Claims or Interests, including all rights in respect of legal and equitable defenses to, or setoffs or recoupment against, any such Unimpaired Claims or Interests.

### D.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Classes of Claims or Interests that reject or are deemed to reject the Plan.  The Debtor reserves the right to modify the Plan in accordance with Article IX.A of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

### E.      *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or an Allowed Interest as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### F.      *Voting Classes*

Class 3 Claims (PIK Loan Claims), Class 4 Claims (General Unsecured Claims), Class 5 Claims (EBT Minority Shareholder Claims) and Class 7 Interests (Existing EB Holdings Interests) are Impaired and, therefore, Holders of PIK Loan Claims, General Unsecured Claims, EBT Minority Shareholder Claims and Existing EB Holdings Interests are entitled to vote to accept or reject the Plan.  These Impaired Classes shall be deemed to have accepted the Plan if, not counting any Holder designated pursuant to section 1126(e) of the Bankruptcy Code, (i) Holders of at least two-thirds in amount of the Allowed Claims held by Holders who actually voted in such Class

have voted to accept the Plan, and (ii) Holders of more than one-half in number of the Allowed Claims held by Holders who actually voted in such Class have voted to accept the Plan.

### G.    *Presumed Acceptance by Non-Voting Classes*

By operation of section 1126(f) of the Bankruptcy Code, Class 1 Claims (Other Priority Claims), Class 2 Claims (Secured Claims) and Class 6 Claims (Intercompany Claims) are Unimpaired and presumed to have accepted the Plan and, therefore, Holders of such Claims are not entitled to vote to accept or reject the Plan.

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class.

To the extent that Claims or Interests of any Class are Reinstated, each Holder of a Claim or Interest in such Class is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

### H.    *Subordinated Claims*

Unless otherwise expressly provided in the Plan or the Confirmation Order, the allowance, classification and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    *General Settlement of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The

31

entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests, and is fair, equitable, and is within the range of reasonableness.  All distributions made to Holders of Allowed Claims and Allowed Interests in accordance with the Plan are intended to be, and shall be, final.

### B.    *Restructuring Transactions*

Prior to, on, or as soon as reasonably practicable after the Effective Date, subject to and consistent with the terms of its obligations under the Plan and the Transaction Agreement, and subject to the rights of the parties to the Transaction Agreement, the Affiliate Co-Plan Proponent, the Debtor, and/or the Reorganized Debtor, as applicable, shall be authorized to enter into such transactions and take (or cause to be taken) all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Transaction Agreement, in each case with the consent of the Required Consenting PIK Lenders and the QXH Parties (the "*Restructuring Transactions*"), including:

1.    the execution, adoption, amendment, and/or delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and the Definitive Documents, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree;

2.    the execution, adoption, amendment and/or delivery of any appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, interest, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree;

3.    the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law;

32

4.    the execution adoption, amendment, and/or delivery of the applicable documents included in the Plan Supplement, to the extent required by the Debtor, including, but not limited to, the Definitive Documents where relevant; and

5.    all other actions that the Debtor and/or the Reorganized Debtor, as applicable, determine to be necessary or appropriate, in the most tax efficient manner to the extent commercially reasonable, including making filings or recordings that may be required by applicable law.

For purposes of effectuating the Plan, none of the transactions contemplated in this Article IV.B shall constitute a change of control under any agreement, contract, or document of the Debtor.

Each officer, member of the board of directors, or manager of the Debtor is (and each officer, member of the board of directors, or manager of the Reorganized Debtor shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorizations, consents, or any further actions required under applicable law, regulation, order, or rule (including, without limitation, any action by the shareholders or directors or managers of the Debtor or the Reorganized Debtor) except for those expressly required pursuant to the Plan.

All matters provided for herein involving the corporate structure of the Debtor or Reorganized Debtor, or any corporate, limited liability company, or related action required by the Debtor or Reorganized Debtor in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the shareholders, members, directors, or managers of the Debtor or Reorganized Debtor, and with like effect as though such action had been taken unanimously by the shareholders, members, directors, or managers, as applicable, of the Debtor or Reorganized Debtor.

33

**C.** ***Cancellation of Liens.***

Upon the payment or other satisfaction of an Allowed Secured Claim, the Holder of such Allowed Secured Claim shall deliver to the Debtor or Reorganized Debtor, as applicable, any collateral or other property of the Debtor held by such Holder, and any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Secured Claim that may be required in order to terminate any Lien, related financing statements, mortgages, mechanic's liens, or *lis pendens*, or other similar interests or documents.

**D.** ***Sources of Consideration for Plan Distributions***

Consideration for Plan distributions shall be the Reorganized EB Holdings Stock, the Class B Units, the Class C Units and the Debtor's Cash on hand.

**E.** ***Corporate Existence***

Except as otherwise provided in the Plan, any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, or as a result of any Restructuring Transactions, the Debtor shall continue to exist after the Effective Date as a separate corporation under state law or other form of Entity under governing state law with all the powers of such corporation or other form of Entity pursuant to the applicable law in the jurisdiction in which the Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise (including pursuant to the New Organizational Documents), and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, federal or foreign law).  For the avoidance of doubt, nothing in this Article IV.E prevents, precludes or otherwise impairs the Reorganized Debtor from merging, amalgamating or otherwise restructuring its legal Entity form in accordance with applicable non-bankruptcy law after the Effective Date.

**F.      *Vesting of Assets in the Reorganized Debtor***

Except as otherwise provided in the Plan, any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement or pursuant to a Final Order of the Bankruptcy Court, on the Effective Date, all property of the Estate, all Causes of Action and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor free and clear of all Liens, Claims, charges or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, the Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims (other than Fee Claims), Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**G.      *Satisfaction of the PIK Loan Agreement and Cancellation of Existing Securities and Agreements***

On the Effective Date, pursuant to section 5.02 of the Annex to the PIK Loan Agreement and the affirmative vote by the PIK Lenders in Class 3 to accept the Plan, all Claims and Causes of Action asserted or that may be asserted under the PIK Loan Agreement are waived and released, all obligations under the PIK Loan Agreement, including without limitation all PIK Loan Claims and all monetary or non-monetary obligations, are fully and finally satisfied and waived by the Holders of the PIK Loan Claims and the PIK Loan Agreement is cancelled.

Except as expressly provided in the Plan and Confirmation Order, on the Effective Date, the PIK Loan Agent and its respective agents, successors and assigns shall be fully discharged of all of their duties and obligations under the PIK Loan Agreement and any documents related thereto (including, without limitation, the GLAS Engagement Letter and the GLAS Agreements) and the GLAS Engagement Letter shall be deemed terminated and of no further force or effect.

Additionally, except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date:

35

1.     the obligations of the Debtor under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of, or Interests in, the Debtor that are specifically Reinstated pursuant to the Plan) shall be cancelled as to the Debtor and the Reorganized Debtor shall not have any continuing obligations thereunder;

2.     the obligations of the Debtor pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of or Interests in the Debtor that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, however, that, in the cases of clauses (1) and (2) hereof, notwithstanding Confirmation or the occurrence of the Effective Date, any agreement that governs the rights of any other Holder of a Claim shall continue in effect solely for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan as provided herein.

Nothing in this section shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtor, except to the extent set forth in or provided for under the Plan, or effect a cancellation of any Reorganized EB Holdings Stock.

**H.    *Corporate Action***

On the Effective Date, all actions contemplated by the Plan and the Transaction Agreement shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable:

1.      the execution and delivery of the Definitive Documents and any related instruments, agreements, guarantees, filings, or other related documents;

2.      the implementation of the Restructuring Transactions;

3.      the exchange of 100% of the Allowed PIK Loan Claims for 86.811% of the Reorganized EB Holdings Stock and the concurrent cancellation of the Allowed PIK Loan Claims;

4.      at the same time as the transaction described in the foregoing clause 3 of this Article IV.H, the Sponsor's contribution, transfer, assignment and delivery of all of its right, title, and interest in the EBT Ordinary Shares to the Debtor for 0.31% of the Reorganized EB Holdings Stock;

5.      at the same time as the transaction described in the foregoing clauses 3 and 4 of this Article IV.H, the issuance of 12.804% of the Reorganized EB Holdings Stock to Holders of EBT Minority Shareholder Claims in consideration of their contribution, transfer, assignment and delivery of all their right, title and interest in the EBT Ordinary Shares to the Debtor and in satisfaction, compromise, settlement, release and discharge of, and in exchange for, the EBT Minority Shareholder Claims;

6.      immediately following the completion of the transaction described in the foregoing clause 3, 4 and 5 of this Article IV.H: (i) the automatic contribution by each Holder of Allowed PIK Loan Claims of 100% of the Reorganized EB Holdings Stock received by such Holder pursuant to the foregoing clause 3 of this Article IV.H to NewCo in exchange for such Holder's *pro rata* share of the Class B Units, and (ii) the automatic contribution by each of the Sponsor and the EBT Minority Shareholders of 100% of the Reorganized EB Holdings Stock received by each of the Sponsor and the EBT Minority Shareholder pursuant to the foregoing clauses 4 and 5 of this Article IV.H to NewCo in exchange for their *pro rata* share of the Class C Units;

37

7. the exchange of 100% of Existing EB Holdings Interests for 0.075% of the Reorganized EB Holdings Stock (and the cancellation of the Existing EB Holdings Interests immediately thereafter);

8. the effectiveness of the Third Amended & Restated NewCo LLC Agreement; and

9. all other actions contemplated by the Plan, the Transaction Agreement and the EBT Minority Contribution Agreement (whether to occur before, on or after the Effective Date).

On the Effective Date, all matters provided for in the Plan, the Transaction Agreement and the EBT Minority Contribution Agreement involving the corporate structure of the Reorganized Debtor or NewCo, and any corporate action required by the Debtor, the Reorganized Debtor or NewCo in connection with the Plan, the Transaction Agreement and the EBT Minority Contribution Agreement shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor, the Reorganized Debtor, NewCo, or the directors or officers thereof.

On or (as applicable) before the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor shall be authorized and (as applicable) directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor, including, without limitation, the Definitive Documents and any and all other agreements, documents, securities and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

**I.** *New Organizational Documents*

To the extent required under the Plan or applicable non-bankruptcy law, the Reorganized Debtor shall file its New Organizational Documents with the applicable Secretaries of State or other applicable authorities in their respective states, provinces or countries of incorporation or formation in accordance with the corporate laws of the respective states, provinces

or countries of incorporation or formation.  To the extent required pursuant to section 1123(a)(6) of the Bankruptcy Code, to the extent applicable to the Chapter 11 Case, the New Organizational Documents of the Reorganized Debtor will prohibit the issuance of non-voting equity securities.

### J.       *Directors and Officers of the Reorganized Debtor*

On the Effective Date, all managers, directors, officers and other members of the existing board or governance body of the Debtor (unless such Persons have resigned or been dismissed in accordance with applicable law), as applicable, shall continue to hold office and shall continue to have authority from and after such time, solely to the extent not expressly excluded in the roster of the New Board.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtor will disclose in advance of the Confirmation Hearing the identity and affiliations of the individuals serving (or selected to serve) on the New Board, as well as those Persons who are serving (or will serve) as officers of the Reorganized Debtor, if any.  If any director to be appointed to a New Board or an officer is an "insider" as defined under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer from and after the Effective Date will also be disclosed.

### K.       *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtor, and the officers and members of the New Board thereof, are authorized to and may issue, execute, deliver, file or record such contracts, Securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan, the Transaction Agreement and the EBT Minority Contribution Agreement, the Securities issued pursuant to the Plan, including the Reorganized EB Holdings Stock, Class A Units, Class B Units and Class C Units, in the name of and on behalf of the Reorganized Debtor and NewCo, respectively, without the need for any approvals, authorization or consents, except those expressly required pursuant to the Plan.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtor.

**L.**   ***Authorization, Issuance and Delivery of Reorganized EB Holdings Stock, Class B Units, and Class C Units***

On the Effective Date, (i) the Reorganized Debtor is authorized to issue or cause to be issued and shall issue the Reorganized EB Holdings Stock for distribution in accordance with the terms of the Plan, (ii) NewCo is authorized to issue or cause to be issued and shall issue the Class B Units and the Class C Units, (iii) the Reorganized EB Holdings Stock issued to Holders of Allowed PIK Loan Claims hereunder shall automatically and without any action by the Holders of Allowed PIK Loan Claims, be contributed to NewCo in exchange for such Holder's *pro rata* share of the Class B Units, and (iv) the Reorganized EB Holdings Stock issued to the Sponsor and the EBT Minority Shareholders hereunder shall automatically and without any action by the Sponsor and the EBT Minority Shareholders, be contributed to NewCo in exchange for the Sponsor's and each EBT Minority Shareholder's *pro rata* share of the Class C Units, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  All of the shares of Reorganized EB Holdings Stock, Class B Units and Class C Units issued pursuant to the Plan shall be duly authorized and validly issued. When issued, the Reorganized EB Holdings Stock shall be fully paid and non-assessible. When issued, the holders of the Class B Units and Class C Units will have no obligation to make payments or contributions to NewCo or its creditors solely by reason of their ownership of Class B Units or Class C Units, as applicable.

**M.**   ***Exemption from Certain Taxes and Fees***

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan (including under any of the Definitive Documents and related documents) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax,

40

recordation fee or governmental assessment. Such exemption under section 1146(a) of the Bankruptcy Code specifically applies, without limitation, to: (1) the creation and recording of any mortgage, deed of trust, Lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any Restructuring Transaction; (4) the issuance, distribution and/or sale of any Securities of the Debtor or the Reorganized Debtor; and (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including (a) any merger agreements, (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution, (c) deeds, (d) bills of sale, or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

### N.   *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VII of the Plan, unless expressly stated otherwise in the Plan, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and such rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action in accordance with the best interests of the Reorganized Debtor. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Causes of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against it. The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan**. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Debtor or Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or Consummation of the Plan.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor.    The Reorganized Debtor, through its authorized agents or representatives, shall retain and have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

### O.    *Notice of Effective Date*

On the Effective Date, the Debtor shall File a notice of the occurrence of the Effective Date with the Bankruptcy Court.

### P.    *Securities Registration*

Pursuant to section 1145 of the Bankruptcy Code, the issuance of Reorganized EB Holdings Stock, Class A Units, Class B Units and Class C Units by the Reorganized Debtor and NewCo, respectively, as contemplated by the Plan, the Transaction Agreement and the EBT Minority Contribution Agreement is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution or sale of Securities.    The Reorganized EB Holdings Stock, Class A Units, Class B Units and Class C Units issued by the Reorganized Debtor and NewCo, respectively, pursuant to section 1145 of the Bankruptcy Code (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Reorganized Debtor as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within ninety (90) calendar days of such transfer, (iii) has not acquired the Securities from an "affiliate" within one year of such transfer, and (iv) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

To the extent securities were offered prior to the filing of this Plan, such securities were offered in reliance on the exemption provided by section 4(a)(2) of the Securities Act.

42

Any transfer agent shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the Reorganized EB Holdings Stock, Class A Units, Class B Units and Class C Units are exempt from registration and/or eligible for book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no person (including, for the avoidance of doubt, the DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Reorganized EB Holdings Stock, Class A Units, Class B Units and Class C Units are exempt from registration and/or eligible for book-entry delivery, settlement, and depository services.

## ARTICLE V.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.** ***Assumption of Executory Contracts and Unexpired Leases***

On the Effective Date, the Transaction Agreement, the Alternative Release, the Contribution Agreement, the EBT Minority Contribution Agreement and the EBT Minority Release shall be assumed by the Debtor.

Additionally, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Claims, all Executory Contracts and Unexpired Leases to which the Debtor is a party and which have not expired by their own terms on or prior to the Confirmation Date, shall be deemed assumed, except for (i) the PIK Loan Agreement, which if determined to be an Executory Contract, is expressly rejected; and (ii) any Executory Contract or Unexpired Lease that (1) is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) have been previously rejected by a Final Order; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions provided for in the Plan or the Schedule of Rejected Executory Contacts and Unexpired Leases, pursuant to sections 365(a) and

1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, but not assigned to a third party before the Effective Date, shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

**B.**      ***Cure of Defaults for Assumed Executory Contracts and Unexpired Leases***

The Reorganized Debtor shall pay Cure Claims, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure Claims that differ from the amounts paid or proposed to be paid by the Reorganized Debtor to a counterparty must be filed with the Reorganized Debtor and the Notice and Claims Agent on or before thirty (30) days after the Effective Date. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Reorganized Debtor of the Cure Claim; provided, however, that nothing herein shall prevent the Reorganized Debtor from paying any Cure Claim despite the failure of the relevant counterparty to file such request for payment of such Cure Claim. The Reorganized Debtor also may, with the

44

consent of the Required Consenting PIK Lenders and the QXH Parties, settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court before the Confirmation Hearing.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Confirmation Hearing or, if otherwise determined by the Court, as soon thereafter as practicable.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure Claim, the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of any Cure Claim shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  The Debtor and Reorganized Debtor, as applicable, reserve the right at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence or outcome of any such dispute.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure Claim pursuant to this Article V.B shall result in the full release and satisfaction of any Cure Claims, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

C.    ***Indemnification Obligations***

The obligation of the Debtor to advance expenses for or indemnify any individual who is serving or served as one of the Debtor's directors, officers or employees on or after the Petition Date will be deemed and treated as Executory Contracts that are assumed by the Reorganized Debtor pursuant to the Plan as of the Effective Date on the terms provided in the applicable

45

certificates of incorporation, bylaws or similar constituent documents, by statutory law or by written agreement, policies or procedures of or with the Debtor, including, without limitation, the EBT Minority Contribution Agreement. Accordingly, such indemnification and advancement of expenses obligations will survive and be unaffected by entry of the Confirmation Order, irrespective of whether such indemnification or advancement of expenses is owed for an act or event occurring before or after the Petition Date; provided, however, that the Reorganized Debtor shall not amend or restate any New Organizational Documents before or after the Effective Date to terminate or adversely affect any such indemnification or advancement of expenses obligations; provided, further, that notwithstanding anything to the contrary herein, nothing herein shall affect (i) the release of the Additional Released Claims set forth in section 4 of the EBT Minority Release or (ii) the limitations on the Debtor's indemnification and advancement of expenses obligations set forth in section 14.2 of the EBT Minority Contribution Agreement, which shall, in the case of (i) and (ii), remain in full force and effect.

### D.  *Director and Officer Liability Insurance*

The Debtor's D&O Liability Insurance Policies shall be Reinstated under the Plan to the fullest extent possible under applicable law. Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtor shall be deemed to have assumed all D&O Liability Insurance Policies with respect to the Debtor's directors, managers, officers and employees serving on or prior to the Effective Date pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such assumed indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtor under the Plan and no Proof of Claim, Administrative Claim or objection to Cure Claim need be Filed with respect thereto.

### E.    *Insurance Policies*

All insurance policies pursuant to which the Debtor has any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Debtor and Reorganized Debtor and shall continue in full force and effect thereafter in accordance with their respective terms.  All other insurance policies shall vest in the Reorganized Debtor.

### F.    *Modifications, Amendments, Supplements, Restatements or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority or amount of any Claims that may arise in connection therewith.

### G.    *Reservation of Rights*

Nothing contained in the Plan shall constitute a representation by the Debtor that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor, or, after the Effective Date, the Reorganized Debtor shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

47

**H.**     *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**I.**     *Contracts Neither Assumed nor Rejected*

Unless otherwise provided in the Plan, any contract, whether executory or otherwise, that is neither assumed nor rejected pursuant to sections 365 or 1129(b) of the Bankruptcy Code under the Plan shall survive and remain unaffected by the discharge or otherwise by the Chapter 11 Case.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

**A.**     *Distributions Generally*

The Debtor and Reorganized Debtor, as applicable, shall be responsible for making the distributions provided in Articles II and III hereof to the Holders of Allowed Claims.

**B.**     *Delivery of Distributions to Holders of Allowed Claims in Classes 1, 2, and 4.*

Except as otherwise provided in this Plan, distributions to the Holders of Allowed Claims in Classes 1, 2, and 4 shall be made to Holders of record as of the Distribution Record Date: (i) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Debtor or Reorganized Debtor has not received a written notice of a change of address; (ii)  to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein; (iii) at the addresses set forth in any written notices of address changes delivered to the Debtor or Reorganized Debtor after the date of any related Proof of Claim; or (iv) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.  The Debtor and the Reorganized Debtor, as applicable, shall not incur any liability whatsoever on account of any distributions under this Plan except for gross negligence or willful misconduct.

**C.**     *Distributions to Holders of Allowed PIK Loan Claims*

On the Effective Date, the Reorganized Debtor and NewCo (or such other Entities designated by the Reorganized Debtor or NewCo) shall make all distributions to the Holders of Allowed PIK Loan Claims in  accordance  with  the  terms  of  the  Plan  and  the  Transaction

48

Agreement.  Any distribution obligations of the Reorganized Debtor and NewCo (or such other Entities designated by the Reorganized Debtor or NewCo) to Holders of Allowed PIK Loan Claims shall be satisfied by the Reorganized Debtor issuing the Reorganized EB Holdings Stock to Holders of Allowed PIK Loan Claims, which Reorganized EB Holdings Stock shall, automatically, and without any action by the Holders of Allowed PIK Loan Claims, be contributed to NewCo in exchange for such Holders' *pro rata* share of the Class B Units, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Following such contribution, NewCo shall record, or cause the recording of, the name of each holder of Class B Units on the NewCo Membership Register, and reflect the number of Class B Units held by such Holder.

**D.**     ***Distributions to Holders of EBT Minority Shareholder Claims***

On the Effective Date, the Reorganized Debtor and NewCo (or such other Entities designated by the Reorganized Debtor or NewCo) shall make all distributions to the Holders of EBT Minority Shareholder Claims in accordance with the terms of the Plan and the EBT Minority Contribution Agreement.  Any distribution obligations of the Reorganized Debtor and NewCo (or such other Entities designated by the Reorganized Debtor or NewCo) to Holders of EBT Minority Shareholder Claims shall be satisfied by the Reorganized Debtor issuing the Reorganized EB Holdings Stock to Holders of EBT Minority Shareholder Claims, which Reorganized EB Holdings Stock shall, automatically, and without any action by the Holders of EBT Minority Shareholder Claims, be contributed to NewCo in exchange for such Holders' *pro rata* share of the Class C Units, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Following such contribution, NewCo shall record, or cause the recording of, the name of each holder of Class C Units on the NewCo Membership Register, and reflect the number of Class C Units held by such Holder.

**E.**     ***Distributions to the Holder of Existing EB Holdings Interests***

On the Effective Date, the Existing EB Holdings Interests shall be cancelled and the Holder of the Existing EB Holdings Interests shall receive 0.075% of the Reorganized EB Holdings Stock

49

in accordance with the terms of the Plan, the Transaction Agreement, and the First TA Amendment.

### F.    *Distribution Record Date*

As of the close of business on the Distribution Record Date, the PIK Facility Register, shall be closed, and the PIK Loan Agent shall not be required to make any further changes in the PIK Facility Register.  None of the Debtor, the Reorganized Debtor, or the PIK Loan Agent, shall have any obligation to recognize any transfer of the PIK Loan Claims or other Claims occurring on or after the Distribution Record Date.

### G.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

### H.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms that are reasonable and appropriate.

Distributions in respect of Allowed PIK Loan Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Debtor, the Reorganized Debtor or NewCo (or such other Entity

50

designated by the Debtor or Reorganized Debtor, which Entity shall subsequently deliver to the Debtor, the Reorganized Debtor or NewCo any applicable IRS Form W-8 or Form W-9 received) an appropriate IRS Form W-9 or (if the payee is a foreign Entity as determined for federal income tax purposes) IRS Form W-8 and any other forms or documents reasonably requested by the Debtor, the Reorganized Debtor or NewCo to reduce or eliminate any withholding required by any federal, state, or local Taxing Authority.  If such request is made by the Debtor, the Reorganized Debtor or NewCo (or such other Entities designated by the Debtor, the Reorganized Debtor or NewCo) and the Holder, fails to comply before the date that is one hundred and eighty (180) days after the request is made, and the Holder has not otherwise made arrangements satisfactory to the disbursing party for the payment of any resulting tax obligations, the amount of such distribution shall irrevocably revert to the Reorganized Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Reorganized Debtor, NewCo or their respective property.

I.      *Unclaimed Property*

Undeliverable distributions or unclaimed distributions shall remain in the possession of the Debtor until such time as a distribution becomes deliverable or a Holder accepts distribution, or such distribution reverts back to the Debtor or Reorganized Debtor, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind.  Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred and eighty (180) days from the initial date of distribution.  After such date all unclaimed property or interest in property shall revert to the Reorganized Debtor, and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred.

J.      *Manner of Payment under Plan*

Except as otherwise specifically provided in the Plan, at the option of the Debtor or the Reorganized Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor.

51

### K.    *Satisfaction of Claims*

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

### L.    *Fractional Shares*

If any distributions of Reorganized EB Holdings Stock, Class B Units or Class C Units pursuant to the Plan would result in the issuance of a fractional share of any Reorganized EB Holdings Stock, Class B Units or Class C Units, then the number of Reorganized EB Holdings Stock, Class B Units or Class C Units to be issued in respect of such distribution shall be calculated to one decimal place and rounded up or down to the closest whole share (with a half share or greater rounded up and less than a half share rounded down).  The total number of shares of Reorganized EB Holdings Stock, Class B Units and Class C Units to be distributed in connection with the Plan shall be adjusted as necessary to account for the rounding provided for in this Article VI.K.  No consideration shall be provided in lieu of fractional shares or notes that are rounded down.  The Reorganized Debtor shall not have any obligation to make a distribution that is less than one (1) share of Reorganized EB Holdings Stock, Class B Units or Class C Units.  Shares of Reorganized EB Holdings Stock, Class B Units and Class C Units that are not distributed in accordance with this Article VI.K shall be returned to, and ownership thereof shall vest in, the Reorganized Debtor or NewCo, as applicable.

## ARTICLE VII.

## RELEASE, INJUNCTION AND RELATED PROVISIONS

### A.    *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, including the Plan Supplement documents, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of Claims (regardless of whether a Proof of Claim was filed) and Causes of Action of any nature whatsoever, including any interest accrued on Claims from

52

and after the Petition Date, whether known or unknown, against liabilities of, liens on, obligations of, rights against, and interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not the Holder of such a Claim has accepted the Plan.  Any default or "event of default" by the Debtor or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Case shall be deemed cured (and no longer continuing) as of the Effective Date.  The discharge shall be to the fullest extent provided under sections 1141(d)(1)(A) and (B) and other applicable provisions of the Bankruptcy Code.  The Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the Effective Date occurring.

## B.    *Release of Liens*

Except as otherwise specifically provided in the Plan or the Confirmation Order, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtor.

## C.    *Debtor Release*

**Pursuant to section 1123(b) of the Bankruptcy Code, to the fullest extent permitted by applicable law and to the fullest extent provided under the Alternative Release and the EBT Minority Release, for good and valuable consideration, including the contribution of the Released Parties to facilitate the expeditious reorganization of the Debtor and the**

**implementation of the restructuring contemplated by the Plan, pursuant to the Confirmation Order and on and after the Effective Date, the Released Parties and their respective property are absolutely, unconditionally, and irrevocably deemed released, remised, acquitted and forever discharged by the Debtor, the Reorganized Debtor, and the Estate from any and all Causes of Action, including any derivative claims, asserted or assertable on behalf of the Debtor, the Reorganized Debtor, the Estate, or any Affiliate of the foregoing, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities law or otherwise that the Debtor, the Reorganized Debtor, the Estate or any Affiliates of the foregoing would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtor or any other Entity, based on or relating to, or in any manner arising from or in connection with, in whole or in part, the Debtor, its Affiliates, the Reorganized Debtor, the involuntary chapter 11 case commenced against the Debtor in the Bankruptcy Court, the Chapter 11 Case, the Debtor's in-or out-of-court restructuring efforts, the Transaction Agreement, the Contribution Agreement, the Alternative Release, the EBT Minority Release, the EBT Minority Contribution Agreement, any Definitive Documents, intercompany transactions, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, including the PIK Loan Agreement, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, preparation, dissemination, or filing of the Plan, the Plan Supplement, the Disclosure Statement, the Transaction Agreement, the Contribution Agreement, the GLAS Letter Agreement, the Alternative Release, the EBT Minority Release, the EBT Minority Contribution Agreement, any Definitive Documents, and any related agreements, instruments, term sheets or other documents contemplated by the foregoing or appropriate to effectuate the foregoing, the pursuit of Confirmation, the pursuit of Consummation, and**

any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a final order of a court of competent jurisdiction (all such claims and liabilities as described herein, collectively, the "**Released Claims**").

Notwithstanding anything to the contrary in the foregoing, the Released Claims do not include and do not release the (i) the Excluded Claims, (ii) any indemnification obligations specifically assumed pursuant to and in accordance with the Plan, (iii) any indemnification obligations owed by parties other than the Debtor or Reorganized Debtor under the GLAS Direction Letter or the GLAS Agreements, or (iv) any post-Effective Date obligations of any party or Entity under the Plan, any of the Restructuring Transactions or any document, instrument or agreement (including those set forth in the Plan Supplement, the Transaction Agreement, the Contribution Agreement or the EBT Minority Contribution Agreement) executed to implement the Plan.

D.    *Third-Party Release*

For good and valuable consideration, as of the Effective Date and to the fullest extent permitted by applicable law and to the fullest extent provided under the Alternative Release and the EBT Minority Release, as of the Effective Date, each of the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and acquitted each of the Released Parties and their respective property from any and all Released Claims (such releases, collectively, the "**Third-Party Releases**").

Notwithstanding anything to the contrary in the foregoing, the Third-Party Releases do not include and do not release (i) the Excluded Claims, (ii) any indemnification obligations specifically assumed pursuant to and in accordance with the Plan, (iii) any indemnification obligations owed by parties other than the Debtor or Reorganized Debtor under the GLAS Direction Letter or the GLAS Agreements, (iv) any post-Effective Date obligations of any party or Entity under the Plan, any of the Restructuring Transactions or any document,

55

instrument or agreement (including those set forth in the Plan Supplement, the Transaction Agreement, the Contribution Agreement or the EBT Minority Contribution Agreement) executed to implement the Plan, or (v) any obligation of any Non-Debtor, or of any Affiliate of Sponsor, to any other Non-Debtor or other Affiliate of Sponsor or to any of its own Representatives or to any Representatives of any other Non-Debtor or of any other Affiliate of Sponsor, in each case under (a) any charter, bylaw, statue or common-law or equitable doctrine providing a right of contribution, advancement of expense or indemnification, or (b) any intercompany arrangement, document, instrument or agreement, including any entered into in connection with, or disclosed in or pursuant to, the Transaction Agreement or the Contribution Agreement.

E.    *PIK Loan Satisfaction and Release*

On the Effective Date, pursuant to section 5.02 of the Annex to the PIK Loan Agreement and the affirmative vote of the Holders of the PIK Loan Claims in Class 3 to accept the Plan, any and all Claims and Causes of Action, including any derivative claims, asserted or assertable, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities law or otherwise, that any Holder of a PIK Loan Claim would have been legally entitled to assert in their own right (whether individually or collectively), including, without limitation, against any Released Party, based on or relating to, or in any manner arising from or in connection with, in whole or in part, the PIK Loan Agreement are waived and released and all obligations under the PIK Loan Agreement, including, without limitation, all PIK Loan Claims and all monetary or non-monetary obligations shall be fully and finally satisfied and waived and the PIK Loan Agreement and all obligations thereunder or related thereto are cancelled.

F.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Released Party shall have or incur, and each Released Party is hereby released and exculpated from, any Exculpated Claim; <u>provided</u>, <u>however</u>, that the foregoing "Exculpation" shall have no effect

on the liability of any Entity that results from any such act or omission that is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct.

**G.    *Injunction***

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to Article VII of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, and/or the Released Parties:

1.    commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;

2.    enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests;

3.    creating, perfecting or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests;

4.    asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

5.    commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such

57

**Claims or Interests released or settled pursuant to the Plan, the Plan Supplement, or the Definitive Documents.**

**Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan.**

H.    *Waiver of Statutory Limitations on Releases*

Each Releasing Party in each of the releases contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or Claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to Claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party, including the provisions of California Civil Code section 1542. The releases contained in the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

# ARTICLE VIII.

## CONDITIONS PRECEDENT TO CONFIRMATION AND

## CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to Confirmation of the Plan*

The following are conditions precedent to Confirmation that shall have been satisfied or waived in accordance with Article VIII.C:

1.      an order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered by the Bankruptcy Court;

2.      the Plan and the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed; and

3.      the transactions contemplated under the Contribution Agreement and the EBT Minority Contribution Agreement shall have been consummated in accordance with the terms thereof; and

4.      the Transaction Agreement and the EBT Minority Contribution Agreement shall not have been terminated and shall be in full force and effect.

**B.**      ***Conditions Precedent to the Effective Date***

The following are conditions precedent to Consummation that shall have been satisfied or waived in accordance with Article VIII.C:

1.      the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtor, the Sponsor and the Required Consenting PIK Lenders;

2.      the Confirmation Order shall not have been stayed, modified, vacated, or reversed on appeal;

3.      the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein (and any amendment thereto) shall have been filed with the Bankruptcy Court in a manner consistent in all material respects with the Transaction Agreement;

4.      the Debtor shall have received any authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are necessary to implement the Plan and that are required by law, regulation or order;

5.      the New Organizational Documents shall have been filed with the appropriate governmental authorities, as applicable;

59

6.    the Transaction Agreement shall not have been terminated and shall be in full force and effect; provided that the Transaction Agreement shall terminate automatically in accordance with its terms immediately following the occurrence of the Effective Date;

7.    the EBT Minority Contribution Agreement shall not have been terminated and shall be in full force and effect;

8.    all unpaid PIK Loan Agent Expenses shall have been paid in full in accordance with the GLAS Engagement Letter;

9.    EBT shall have received consent from Bank of America, N.A., Barclays Bank PLC and Lloyds Bank PLC, in their capacity as lenders, to the [Consummation] or a waiver from each of the foregoing lenders of the change of control provisions under the applicable EBT loan agreement;

10.    Metals HoldCo shall have purchased directors' and officers' liability insurance covering those persons who are covered by the Metals HoldCo Entities directors' and officers' liability insurance policy in effect on the date hereof on terms not less favorable than those of such existing insurance coverage, but in any event such coverage shall include employment practices and fiduciary liability; and

11.    all actions and all agreements, instruments or other documents necessary to implement the Plan, including, without limitation, entry into the Definitive Documents and the New Organizational Documents, shall have been effected or executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation of such agreements, instruments or other documents shall have been waived or satisfied in accordance with their terms thereof and to the extent applicable, the closing of such agreements, instruments or other documents shall have occurred.

C.    *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article VIII may be waived only if waived in writing by the Debtor, the Sponsor, the QXH

60

Parties and the Required Consenting PIK Lenders without notice, leave or order of the Bankruptcy Court or any formal action; provided, that, in addition to the foregoing, the waiver of the condition set forth in: (i) Article VIII.B.7 shall require the written consent of the EBT Minority Shareholders, and (ii) Article VIII.B.8 shall require the written consent of the PIK Loan Agent.

### D. *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

### E. *Effect of Failure of a Condition.*

If the conditions listed in Article VIII.B of the Plan are not satisfied or waived in accordance with Article VIII.C of the Plan on or before the date that is the first Business Day that is thirty (30) days after the date on which the Confirmation Order is entered, or by such later date as may be agreed between the Debtor, the Sponsor, the QXH Parties, and the Required Consenting PIK Lenders, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtor, (b) prejudice in any manner the rights of any Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtor, any Holders of Claims or Interests, or any other Entity.

## ARTICLE IX.

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### A. *Modification and Amendments*

Subject to the limitations contained herein and in the Transaction Agreement, the Debtor and the Affiliate Co-Plan Proponent reserve the right, subject to the Transaction Agreement and with the written consent of the Sponsor, the EBT Minority Shareholders, the Required Consenting PIK Lenders and the QXH Parties (and, with respect to any modification that directly and adversely affects the legal or economic rights of the PIK Loan Agent, the PIK Loan Agent), to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on

61

modifications set forth in the Plan and the Transaction Agreement, the Debtor and the Affiliate Co-Plan Proponent expressly reserve their rights, with the written consent of the Sponsor, the EBT Minority Shareholders, the Required Consenting PIK Lenders and the QXH Parties (and, with respect to any modification that directly and adversely affects the legal or economic rights of the PIK Loan Agent, the PIK Loan Agent), to alter, amend or materially modify the Plan with respect to the Debtor after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

**B.**      ***Effect of Confirmation on Modifications***

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.**      ***Revocation or Withdrawal of the Plan***

Subject to the terms of the Transaction Agreement, the Debtor reserves the right, subject to the written consent of the Sponsor, the QXH Parties and the Required Consenting PIK Lenders, to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims, (ii) prejudice in any manner the rights of the Debtor or any other Entity, including the Holders of Claims or Interests or any Non-Debtor, or (iii) constitute a representation, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity, including the Holders of Claims or Interests, or any Non-Debtor.  Notwithstanding the foregoing, neither revocation nor withdrawal of the Plan nor this section IX.C shall alter, modify or otherwise impact the terms of the

Transaction Agreement, Contribution Agreement, the Alternative Release and the EBT Minority Release that have gone effective prior to such revocation or withdrawal.

## ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount or allowance of Claims;

2. to hear and determine all Fee Claims and to decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of all Fee Claims;

3. resolve any matters related to: (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims; (b) any dispute regarding whether a contract or lease is or was executory or expired; and (c) any other issue related to an Executory Contract or Unexpired Lease;

4. to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Case, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Case, any bar date established in the Chapter 11 Case, or any deadline for responding or objecting to the amount of a Cure, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

63

5. ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6. adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

7. adjudicate, decide or resolve any and all matters related to Causes of Action;

8. adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

9. enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or the Disclosure Statement;

10. enter and enforce any order for the sale of property pursuant to section 363, 1123 or 1146(a) of the Bankruptcy Code;

11. resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

13. issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

14. resolve any cases, controversies, suits, disputes or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations and other provisions contained in Article VII of the Plan, and enter such orders as may

be necessary or appropriate to implement such releases, injunctions and other provisions;

15. resolve any cases, controversies, suits, disputes or Causes of Action with respect to the payment of General Unsecured Claims by the Debtor or the Reorganized Debtor;

16. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

17. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or the Plan Supplement; provided, however, that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court;

18. adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated herein, subject to the proviso in sub-paragraph 17 above;

19. consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20. determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

21. to resolve disputes as to the ownership of any Claim or Interest;

22. hear and determine matters concerning state, local, federal and foreign taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

23. grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

65

24.    hear, adjudicate, decide or resolve any and all matters related to Article VII of the Plan, including without limitation, the releases, discharge, exculpation and injunctions issued thereunder;

25.    enforce all orders previously entered by the Bankruptcy Court;

26.    hear any other matter not inconsistent with the Bankruptcy Code;

27.    enter an order concluding or closing the Chapter 11 Case; and

28.    hear, determine, and resolve any cases, matters, controversies, suits, disputes or Causes of Action in connection with or in any way related to the Chapter 11 Case, including with respect to the settlements, compromises, discharges, releases, injunctions, exculpations and other provisions contained in Article VII of the Plan, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

### A.    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the final versions of the documents contained in the Plan Supplement and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.  All Claims and debts shall be as fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

**B.**    *Statutory Fees*

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtor. On and after the Effective Date, the Reorganized Debtor shall pay all Statutory Fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.

**C.**    *Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**D.**    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order or the Plan Supplement waives any rights of the Debtor or the Affiliate Co-Plan Proponent with respect to the Holders of Claims or Interests prior to the Effective Date.

**E.**    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary or guardian, if any, of each Entity.

**F.**    *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered shall be served by first class or overnight mail:

If to the Debtor or the Reorganized Debtor:

67

EB Holdings II, Inc.
2777 North Stemmons Freeway, Suite 2000
Dallas, Texas 75207
Attn: Howard M. Meyers, President
Email: hmmeyers@quexco.com

With copies to:
Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, Nevada 89119
Attn: Gregory E. Garman, Esq.
Email: ggarman@gtg.legal

- and -

If to the Ad Hoc Committee:
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
Attn: Paul M. Basta, Esq. and Kelley A. Cornish, Esq.
Email: pbasta@paulweiss.com, kcornish@paulweiss.com

### G.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### H.    *Exhibits*

All exhibits and documents included in the Plan and the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Debtor's restructuring website at https://cases.primeclerk.com/ebholdings or the Bankruptcy Court's website at https://www.nvb.uscourts.gov/.

### I.    *Deemed Acts.*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed

68

to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

[Signature pages follow.]

*Dated*: August 27, 2019    GARMAN TURNER GORDON LLP

By: */s/ Talitha Gray Kozlowski*
   GREGORY E. GARMAN, ESQ.
   TALITHA GRAY KOZLOWSKI, ESQ.
   TERESA M. PILATOWICZ, ESQ.
   650 White Drive, Ste. 100
   Las Vegas, Nevada 89119

*Proposed Counsel for EB Holdings II, Inc.*

*Dated*: August 27, 2019    EB HOLDINGS II, INC.

By:
   HOWARD M. MEYERS
Its: Chairman

*Dated*: August 27, 2019    EBT NEWCO, LLC

By:
   HOWARD M. MEYERS
Its: Chairman

Dated: August 27, 2019             GARMAN TURNER GORDON LLP

                                   By: _____
                                       GREGORY E. GARMAN, ESQ.
                                       TALITHA GRAY KOZLOWSKI, ESQ.
                                       TERESA M. PILATOWICZ, ESQ.
                                       650 White Drive, Ste. 100
                                       Las Vegas, Nevada 89119

                                   *Proposed Counsel for EB Holdings II, Inc.*

Dated: August 27, 2019             EB HOLDINGS II, INC.

                                   By: _____
                                       HOWARD M. MEYERS
                                   Its: Chairman

Dated: August 27, 2019             EBT NEWCO, LLC

                                   By: _____
                                       HOWARD M. MEYERS
                                   Its: Chairman